**ELECTRICAL EXPORT CORPORATION**

v.

**UNITED STATES.**

No. 544–58.

United States Court of Claims.

June 7, 1961.

John P. Lipscomb, Jr., Washington, D. C., Floyd F. Toomey, C. Rudolf Peterson, Washington, D. C., J. Bruce Duncan, and James McCarthy, New York City, on the briefs, for plaintiff.

Eugene Emerson, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen. Lyle M. Turner and Rufus E. Stetson, Jr., Washington, D. C., on the briefs, for defendant.

JONES, Chief Judge.

This case concerns § 109 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 109. The plaintiff, Electrical Export Corporation, is a Delaware corporation with its office and principal place of business located in New York City. The plaintiff says that for the year 1952 it qualified as a Western Hemisphere Trade Corporation under § 109. If the plaintiff qualifies under § 109, it is then entitled to the credit provided for by § 26(i) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 26(i).

Section 109(a) of the Code, 56 Stat. 798, 838, 26 U.S.C. § 109 (1952 Ed.) provides as follows:

"Sec. 109. Western Hemisphere Trade Corporations.

"For the purposes of this chapter the term 'western hemisphere trade corporation' means a domestic corporation all of whose business is done in any country or countries in North, Central, or South America, or in the West Indies, or in Newfoundland and which satisfies the following conditions:

"(a) If 95 per centum or more of the gross income of such domestic corporation for the three-year period immediately preceding the close of the taxable year (or for such part of such period during which the corporation was in existence) was derived from sources other than sources within the United States; * * *"

Section 26 of the Code, 53 Stat. 18, 26 U.S.C. § 26 (1952 Ed.) provides credits for corporations as follows:

"In the case of a corporation the following credits shall be allowed to

the extent provided in the various sections imposing tax—

\* \* \* \* \* \*

"(i) \* \* \* In the case of a western hemisphere trade corporation (as defined in section 109)—[As added 64 Stat. 906, 920, as amended 65 Stat. 452, 470.]

\* \* \* \* \* \*

"(2) \* \* \* In the case of a taxable year beginning after March 31, 1951, and before April 1, 1954, an amount equal to 27 per centum of its normal-tax net income computed without regard to the credit provided in this subsection."

The Commissioner of Internal Revenue determined that the plaintiff did not qualify for the year 1952 as a Western Hemisphere Trade Corporation under § 109 and was therefore not entitled to the credit provided for by § 26 (i) (2). On August 12, 1957, the plaintiff filed timely claim for refund for the year 1952 with the District Director. On October 16, 1958, this claim was disallowed. On December 12, 1958, plaintiff filed suit in this court for the refund of $31,943.48 of its 1952 income taxes, together with applicable deficiency interest paid thereto, together with statutory interest on both amounts as provided by law.

The resolution of this lawsuit is dependent on determining the nature of certain interest income received by plaintiff in the 3-year period 1950 through 1952. The interest at issue arises out of four contracts between the plaintiff and Latin-American purchasers who were supplied by the plaintiff with electric locomotives and related equipment. Three of these purchasers were located in Brazil and one in Chile. In payment of goods purchased, the Brazilian buyers issued a series of notes to plaintiff's order calling for semiannual payments of level amounts of principal and interest. The notes of the Chilean purchaser provided for payment of semiannual principal amounts with interest at 4 percent per annum.

These contracts were financed under an agreement between the plaintiff and the Export-Import Bank of Washington whereby the bank agreed to finance a part of each transaction up to 70 percent of the value of the equipment sold. Under this agreement, the bank required that if the local interest payments in each note when paid were not sufficient to cover the bank's interest calculated on the outstanding principal balances, then plaintiff would pay to the bank the difference. When the level interest payments by the foreign purchasers exceeded the bank's requirements, the excess interest was paid by the bank to the plaintiff.

It is our task to identify the sources of this interest income received by plaintiff. If it was from sources in Brazil and Chile, clearly the plaintiff qualifies as a Western Hemisphere trade corporation. If the source of this interest originates in the United States, then of course the plaintiff does not qualify because under § 109 95 percent of the corporation's gross income must have been derived from sources outside the United States.

The trial commissioner has found that more than 95 percent of plaintiff's gross income from the 3-year period ended December 31, 1952, was derived from sources in Brazil and Chile.[1] The defendant takes exception to this finding. The defendant contends that the payments in question were not made pursuant to the promissory notes but that they were made under a separate and distinct agreement between the bank and the taxpayer. Defendant says that the payments to the taxpayer came not from the foreign purchasers in Brazil and Chile but from a source within the United States, the Export-Import Bank of Washington. Furthermore, the defendant declares that the payments did not involve the foreign purchasers but arose out of a financing arrangement entered into and performed solely within the United States. Accordingly, the defendant concludes that the interest at issue in this

1. Finding 31.

case had its source within the United States.

We think the defendant cannot see the forest for the trees. The method of payment of this interest reveals the true nature of this arrangement. When the bank received excess interest from the foreign purchasers, the excess interest was placed in a trustee account from which the bank distributed it to the plaintiff. Indeed, the trial commissioner has found that such excess interest was collected by the bank on behalf of the plaintiff.[2]

We believe that the acceptance of defendant's position here would frustrate that commerce between American businessmen and their Latin-American counterparts which it was the purpose of § 109 to encourage. In A. P. Green Export Co. v. United States, 284 F.2d 383, this court expressed its view on the legislative intent of § 109. We said at page 386:

> "The announced legislative purpose of section 109 was to encourage domestic corporations to engage in foreign commerce. European countries had granted tax concessions to their nationals engaged in Western Hemisphere trade. The Congress was thus moved to grant similar tax credits to our domestic corporations thereby permitting them to compete on equal footing. Without such tax assistance Western Hemisphere trade would in many instances not be profitable enough to pursue."

It would run counter to this construction of § 109 to permit the financing aspect of these contracts to obscure the true source of this interest income, i. e., interest payments by foreign purchasers, situated in Brazil and Chile, to an American seller. The mere fact that these payments were distributed by the Export-Import Bank of Washington cannot shift their source from Latin America to Washington. Viewing the entire transaction involved in the instant case as a whole, we conclude that the plaintiff qualifies as a § 109 corporation for the year 1952 and is entitled to a credit under § 26(i) (2). Therefore the plaintiff is entitled to recover and judgment will be entered to that effect, with the amount of recovery to be determined in further proceedings pursuant to Rule 38 (c), 28 U.S.C.A.

It is so ordered.

DURFEE, LARAMORE, MADDEN, and WHITAKER, Judges, concur.